# EXHIBIT K

Declaration of Kevin Robert Oliver in Support of Defendant Microsoft Corporation's Motion to Exclude Improper Damages Opinions and Testimony of WSOU's Experts

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| CloudofChange, LLC,<br>　　　　*Plaintiff*<br><br>-v-<br><br>NCR Corporation,<br>　　　　*Defendant* | §<br>§<br>§　　6:19-CV-00513-ADA<br>§<br>§<br>§<br>§<br>§<br>§ |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant NCR Corporation ("NCR")'s Motion to Exclude the opinions and testimony of Plaintiff CloudofChange, LLC's ("CoC") technical expert Mr. Gregory Crouse ("Crouse"). Dkt. 68. The Court heard the parties' arguments on April 29, 2021 and made oral rulings on the Motion during the hearing. Dkt. 127. Consistent with the Court's oral rulings and for the reasons set forth below, Defendant NCR's Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### I.　　BACKGROUND

This is a patent infringement case involving two patents related to point of sale ("POS") systems. Plaintiff CoC has asserted U.S. Patent Nos. 9,400,640 ("the '640 patent") and 10,083,012 ("the '012 patent") (collectively, the "asserted patents") against Defendant NCR. Both asserted patents are entitled "Web-Based Point of Sale Builder" and are directed to a system used to build POS terminals for use in a "store or business." '640 patent, col. 2, line 57. CoC's technical expert Mr. Crouse has submitted three documents containing his opinions: an opening report on infringement, a declaration concerning his apportionment analysis, and a rebuttal report on the issue of patent validity. NCR filed its Motion to exclude Crouse's opinions (Dkt. 68), which was subsequently fully briefed (Response, Dkt. 83; Reply 94).

1

## II.     LEGAL STANDARD

An expert witness may provide opinion testimony only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). The "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Accordingly, "a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). A district court shall consider "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citing *Daubert,* 509 U.S. at 593). Further, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702). The ultimate inquiry in a Rule 702 determination is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 147. Thus, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152. However, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." (quoting Fed. R. Evid. 702 advisory committee note)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. ANALYSIS

#### A. Crouse's Qualification as an Expert

Witnesses may be qualified as experts if they possess the relevant specialized "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "The standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the general field

3

related to the subject matter in question." *Wealthmark Advisors Inc. v. Phoenix Life Ins. Co.*, No. SA16CA00485FBESC, 2017 WL 1133506, at *3 (W.D. Tex. Mar. 24, 2017).

NCR contends that Crouse is not a person of ordinary skill in the art even according to his own standard and is therefore not qualified as an expert witness. Dkt. 68 at 3–4. In his opening expert report, Crouse opines that a person of ordinary skill in the art would have "at least a Bachelor's of Science in computer engineering, software engineering, computer science, or an equivalent degree *and/or equivalent practical work experience and two years of work experience with point of sale systems*." Dkt. 68, Ex. 3 at 9 (emphasis added). NCR contends that Crouse does not meet the education standard because he only has a Bachelor's degree of Business Administration in finance. Dkt. 68 at 4. NCR further contends that Crouse does not meet the experience standard because Crouse's three relevant work experiences with BearingPoint, Dell/Perot Systems, and KPMG involved projects for bank clients, and none of the projects "involved systems that involved the use of web servers" or "the use of the Internet." *Id*. at 4–5. However, CoC proffers evidence that during Crouse's three years at BearPoint from 2004 to 2007, Crouse worked on two projects involving point of sale solutions for large financial institutions and dealt with most of the major point of sale vendors, including "Hypercom, Verifone, IBM, and about five others" and their "POS terminals plus software." Dkt. 83 at 4–5 and 8. Further, while at Perot Systems (now Dell), Crouse was involved in another point of sale system project for a financial institution from 2007 to 2009. *Id*. NCR contends that Crouse's working experiences are "in the field of banking" and "did not include the manual coding" of the point of sale system as described in the asserted patents. Dkt. 68 at 11. However, as courts have recognized, a witness "need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the general field related to the subject matter

4

in question." *Wealthmark*, 2017 WL 1133506, at *3; *see also Massok v. Keller Indus., Inc.*, 147 F. App'x 651, 656 (9th Cir. 2005) ("[A]n expert need not be officially credentialed in the specific matter under dispute."). This same standard also applies to NCR's own technical expert Dr. Chatterjee, whose Ph.D. thesis is not related to point of sale systems specifically (Dkt. 83 at 7), but he is qualified because of his education in the general field of computer science. Thus, the Court finds that Crouse is a person of ordinary skill in the art since he has about five years of working experiences involving point of sale systems. Accordingly, the Court finds that Crouse is qualified to testify in this case as a technical expert.

B.     Crouse's Application of the Court's Claim Construction

Expert opinions that contradict or disregard a court's claim constructions should be excluded. *See, e.g., MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) ("expert testimony [that] ignored the court's claim construction 'is irrelevant to the question of infringement' and is inadmissible under Daubert").

The Court previously construed the term "point of sale builder software" to mean "software that builds the POS terminals." Dkt. 44 at 3. NCR contends that Crouse misapplies the Court's claim construction of this term because "he adds the word 'content'" to the Court's construction. Dkt. 68 at 12. Specifically, NCR argues that the point of sale terminal used in the accused NCR Silver product is "static code that is not 'built or edited,'" but Crouse opines that mere data entry in NCR Silver's "POS content management system" is "building." *Id*. In the relevant part, Crouse opines that the "POS content [of the accused NCR Silver] can be added or managed from both the POS device itself, or from a workstation with access to the back-office component." Dkt. 68, Ex. 3 at 16. The Court does not find anything in Crouse's opinion that contradicts the Court's claim construction of the term "point of sale builder software." This is a

5

classical battle between the experts, where the expert from one side opines that adding content constitutes "building" of the POS terminal, while the expert from other side opines that it does not. Therefore, this is not an inadmissibility issue but an issue for the jury to weigh the competing expert opinions.

      **C.**     **Crouse's Apportionment Analysis**

In patent infringement cases, a damages expert may rely on a technical expert's technical analysis regarding which components of the accused products are attributable to the patented invention and the economic value of those components. *See, e.g., Realtime Data, LLC v. Oracle Am., Inc.*, 2017 U.S. Dist. LEXIS 187717 at *14 (E.D. Tex. Mar. 22, 2017). However, "the reasoning and methodology underlying a proffered expert opinion [must be] scientifically valid and that the reasoning and methodology [must be] applied properly to the facts in issue." *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 196 (5th Cir. 1996) (citing *Daubert*, 509 U.S. at 592–93). For every conclusion contained in the expert's proposed testimony, the Court must determine if the methodology leading to that conclusion is sound. *Id.*

Crouse's opening expert report includes an apportionment opinion to assist CoC's damages expert on calculating damages. Dkt. 68, Ex. 3 at 17–20. After concluding that POS systems commonly offer six high level components and the first four components are considered to be "the core functions of a POS system" (*Id.* at 17–18), Crouse conducts his whole apportionment calculation in one single paragraph:

> Based on my review, it is my opinion that every element of the asserted claims of the CloudofChange Patents are contained in the accused NCR Silver Essentials system. It is my opinion that approximately 80% of the NCR Silver Essentials product embodies the asserted patented components of the CloudofChange Patents. My opinion of this approximate 80% apportionment is based on my analysis of the value of the patented components based on the importance of the patented components to the function of the POS system in the manner intended. Accordingly, because the patented components make up

>approximately 80% of the essential functionality of the POS system, additional options such as security and reporting features and other add-on features customized for specific uses such as restaurants, fall into categories that are nice to have, but that are not essential to a functioning POS system. Accordingly, I attribute approximately 20% to all add on components above the essential approximately 80% represented by the CloudofChange Patents for a POS system.

*Id*. at 19–20.

NCR contends that Crouse's percentage calculation is conclusory and that NCR has "no way to understand or meaningfully rebut that number." Dkt. 68 at 15. The Court agrees. Nowhere in Crouse's report does Crouse explain how he reached his "80% apportionment" of the accused product to the patented features, nor does he provide any factual foundation to support this 80% apportionment. In his opening report, Crouse simply offers no explanation on how he reaches this 80% apportionment. Therefore, this Court will exclude Crouse's apportionment opinion since his "reasoning or methodology is not sufficiently tied to the facts of the case." *See Summit 6*, 802 F.3d at 1295.

Indeed, Crouse's apportionment calculation is exactly the kind of "plucked out of thin air" apportionment that the Federal Circuit and many other district courts have rejected. *See, e.g., Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC,* 879 F.3d 1332, 1351 (Fed. Cir. 2018) (excluding an expert's damages opinion where the expert "plucked the 5% royalty rate out of nowhere" because it "is not enough for an expert to simply assert that a particular royalty rate is reasonable in light of evidence without tying the proposed rate to that evidence"); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (rejecting apportionment that was "plucked out of thin air based on vague qualitative notions of the relative importance of the [accused technology]"); *NetFuel, Inc. v. Cisco Sys. Inc.*, Case No. 5:18-cv-02352-EJB, 2020 WL 1274985, at *9 (N.D. Cal. Mar. 17, 2020) (excluding apportionment analysis where the expert "failed to provide the methodology underlying his apportionment

amount or explain how he arrived at that figure based on the facts of this case"); *Guardant Health, Inc. v. Found. Med., Inc.*, No. CV 17-1616-LPS-CJB, 2020 WL 2461551, at *18–19 (D. Del. May 7, 2020), report and recommendation adopted, No. CV 17-1616-LPS-CJB, 2020 WL 5994155 (D. Del. Oct. 9, 2020) (excluding a technical expert's 50% apportionment analysis, where the expert failed to tie the relative value of the patented features to the accused products).

### D.   Crouse's Convoyed Sales Analysis

During the April 29, 2021 hearing, CoC's counsel represented that its damages expert, Ms. Ambreen Salters, does not offer any opinion on convoyed sales and would not rely on any convoyed sales analysis by Mr. Crouse. Dkt. 127 at 26–27. Therefore, this issue is moot.

### E.   Crouse's Rebuttal Opinions regarding Secondary Considerations of Non-Obviousness

Determining whether an invention is obvious from the prior art can require more than merely analyzing the differences between the prior art and the claimed invention. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). Courts may also evaluate "secondary considerations" of obviousness, *i.e.*, other objective factors that may show that an invention was not obvious from the prior art, even if the differences between the prior art and the claimed invention seem slight. *Id*; *see also Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016). Such secondary considerations include commercial success enjoyed by devices practicing the patented invention, industry praise for the patented invention, copying by others, and the existence of a long-felt but unsatisfied need for the invention. *Apple*, 839 F.3d at 1052. However, "a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis." *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012).

In his rebuttal report, regarding secondary considerations, Crouse opines that the asserted patents have been "copied by others." Dkt. 68, Ex. 5 (Crouse Rebuttal Report) at ¶ 215. For this proposition, Crouse relies on "letters [sent] to various players in the point-of-sale industry, based on CloudofChange's determination that its patented technology is being used by others." *Id*. He performed "a superficial review" of those third party products and opines that "others are using similar hosted, cloud-based technologies, as NCR's internal documents show." *Id.* at ¶ 216. NCR contends that Crouse's opinions regarding secondary considerations should be excluded because "they are admittedly not supported by any opinion that there is a nexus between the Asserted Claims and the alleged third party activities." Dkt. 68 at 17–18. However, Crouse has provided at least some evidence of the nexus between the asserted claims and the third party products in his rebuttal report, albeit extremely weak. *See* Dkt. 68, Ex. 5 (Crouse Rebuttal Report) at ¶ 216. As such, the Court will not exclude Crouse's opinion regarding secondary considerations because "[i]t is for the fact finder to determine the magnitude of the nexus that connects a given piece of evidence to the patents in suit and to give appropriate weight to that evidence." *Genband US LLC v. Metaswitch Networks Corp.*, 2016 U.S. Dist. LEXIS 2651 *5–*6 (E.D. Tex. Jan. 8, 2016); *see also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (The nexus requirement goes primarily to the weight secondary considerations should be given.).

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTES IN-PART** and **DENIES IN-PART** Defendant NCR's motion to exclude the opinions and testimony of Mr. Gregory Crouse.

Specifically, NCR's motion is GRANTED with respect to Mr. Crouse's apportionment analysis, is MOOTED as to his convoyed sales analysis, and is DENIED as to the remainder.

SIGNED this 9th day of November, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE