**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

WSOU INVESTMENTS, LLC d/b/a
BRAZOS LICENSING AND
DEVELOPMENT,

                   Plaintiff,

      v.

MICROSOFT CORPORATION,

                  Defendant.

Civil Action No. 6:20-cv-454
Civil Action No. 6:20-cv-461

PUBLIC VERSION

**MICROSOFT CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF**
**NO INFRINGEMENT OF U.S. PATENT NOS. 7,106,702 AND 7,366,160**

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................... 1

II.  MICROSOFT DOES NOT INFRINGE THE '702 PATENT ............................ 2

    A.  The '702 Patent ...................................................................................... 2

    B.  The Accused Network Policy Server ..................................................... 2

    C.  There Is No Evidence that Network Policy Server Practices the "Informing" or "Informed" Limitations of the '702 Patent. ........................................ 3

III.  MICROSOFT DOES NOT INFRINGE THE '160 PATENT ............................ 6

    A.  The '160 Patent ...................................................................................... 6

    B.  The Accused Feature: Azure Monitor's Dynamic Thresholds .............. 6

    C.  There Is no Evidence that Azure Monitor or Dynamic Thresholds Practices the "Determining a Trend" Limitation of the '160 Patent. ........................... 7

IV.  CONCLUSION .................................................................................................. 8

## LIST OF EXHIBITS

| Decl. Ex. | Document Name | Document Abbreviation |
|---|---|---|
| Ex. A | U.S. Patent No. 7,106,702 | '702 Patent |
| Ex. B | Excerpts of the Expert Report of Dr. Stan McClellan - Infringement of U.S. Patent No. 7,106,702 by Microsoft Corporation (Feb. 1, 2022)<br><br>Excerpts of Exhibit 3 of the Report | McClellan 702 Inf. Rept.<br><br>McClellan 702 Inf. Rept. Ex. 3 |
| Ex. C | Excerpts of the Expert Report of Dr. Stan McClellan Regarding Validity of U.S. Patent 7,106,702 (Mar. 1, 2022) | McClellan 702 Valid. Rept. |
| Ex. D | Excerpts of the Opening Expert Report of Alan DeKok (Feb. 1, 2022) | DeKok Op. Rept. |
| Ex. E | Excerpts of the Rebuttal Expert Report of Alan DeKok Regarding U.S. Patent No. 7,106,702 (Mar. 1, 2022) | DeKok Rebuttal Rept. |
| Ex. F | U.S. Patent No. 7,366,160 | '160 Patent |
| Ex. G | Excerpts of the Expert Report of Dr. Stan McClellan - Infringement of U.S. Patent No. 7,366,160 By Microsoft Corporation (Feb. 1, 2022)<br><br>Excerpts of Exhibits 3 & 4 of the Report | McClellan 160 Inf. Rept.<br><br>McClellan 160 Inf. Rept. Ex. 3 or Ex. 4 |
| Ex. H | Declaration of Mark Coates, dated Apr. 11, 2022 | Coates Decl. |
| Ex. I | Excerpts of the Rebuttal Expert Report of Mark Coates Ph.D. Regarding U.S. Patent No. 7,366,160 (Mar. 1, 2022) | Coates Rebuttal Rept. |
| Ex. J | Excerpts of the Testimony of Stan McClellan Ph.D. (Mar. 31, 2022) | McClellan Dep. |

I.      **INTRODUCTION**

WSOU Investment, LLC ("WSOU") has failed to adduce evidence that Microsoft

Corporation ("Microsoft") infringes U.S. Patent Nos. 7,106,702 and 7,366,160.

*The '702 Patent.*  The '702 Patent claims a way of implementing back-up capabilities for

servers that perform Authentication, Authorization, and Accounting (AAA) functionality on a

network.  The patent describes a failover mechanism where, if an active AAA server is

disconnected, a back-up AAA server is brought online, and the network (or specific entities on

the network) is "informed" that this back-up has been activated.  Microsoft's accused Network

Policy Server (NPS) does not meet numerous limitations of the asserted claims, including the

requirement that other network entities (or the network itself) be "informed" that the back-up has

been activated.  The evidence shows that there is no mechanism for the accused NPS software to

"inform" other network entities of the disconnection, activation, or indeed any other state of an

NPS server.

*The '160 Patent.*  The '160 Patent describes a multi-step prediction method that involves

"determining a trend" of a service indicator.  WSOU relies on a single, specific source code

function as practicing the "determining a trend" limitation of the asserted claims.  But this source

code function (and related files) are not used in "Dynamic Thresholds" the accused feature, or

any feature.  WSOU has no evidence at all that Azure Monitor performs "determining a trend."

Because WSOU has failed to advance evidence showing infringement of at least one

element of each asserted claim, the Court should enter judgment of non-infringement in Case No.

6:20-cv-454 (for the '160 Patent) and Case No. 6:20-cv-461 (for the '702 Patent).  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgement must be granted against a party who

has the burden of proof at trial and "fails to make a showing sufficient to establish the existence

of an element essential to that party's case.").

1

## II.    MICROSOFT DOES NOT INFRINGE THE '702 PATENT

### A.    The '702 Patent

The '702 Patent concerns devices that perform AAA functionality on a wireless network. As noted in the Background of the Invention, AAA-function capable devices are prior art.  ('702 Patent, 1:16-22.)  AAA functionality is straightforward: authentication verifies a user's identity; authorization determines if a user can access network resources; and accounting collects user data.  (DeKok Op. Rept., ¶93.)

The '702 Patent claims a technique of adding redundancy to a AAA network via a simple idea: use "a communications network having a plurality of nodes which are AAA function capable."  ('702 Patent, Abstract.)  If one of the active nodes is disconnected from the network, the '702 Patent describes and claims steps for bringing an *inactive* (but AAA-function capable) node online.  The patent requires "monitoring" the network for disconnected "active nodes," "selecting" a new "active node" as a replacement, and "informing" the other AAA-function capable nodes (or the network as a whole) that a new node is now an "active node."  Relevant to this motion is the "informing" requirement, which is present in all of the asserted claims through independent claims 1 and 11.[1]

### B.    The Accused Network Policy Server

WSOU accuses Microsoft's Network Policy Server (NPS) of infringing the asserted claims of the '702 Patent.  Microsoft offers NPS as part of its Windows Server system (McClellan 702 Inf. Rept., ¶10), which implements AAA using a prior art standard called the "Remote Authentication Dial In User Service (RADIUS)."  (*Id.*, ¶12.)  NPS can be deployed as a AAA-function capable server, where the server itself performs AAA (a RADIUS server), or as a

---

[1] WSOU has asserted claims 1, 3, 4, 8, 10-12, and 16-17 of the '702 Patent.

RADIUS proxy, where NPS routes AAA messages from RADIUS clients to RADIUS servers. (*Id.*, ¶14.)[2]

Dr. McClellan contends that Microsoft infringes the asserted claims of the '702 Patent only when NPS is configured as a RADIUS server.  (*See, e.g.*, McClellan 702 Inf. Rept., ¶¶96, 100-101, 105, 109-110, 113, 116.)  Dr. McClellan opines that NPS, so configured, satisfies the "active node" limitation in all asserted claims.  (*See, e.g., id.*, ¶¶100-101 ("[W]henever NPS servers are setup as RADIUS servers, they become AAA functional. The claim language is satisfied, for example, by activating AAA functionality of the NPS nodes.").)

### C.    There Is No Evidence that Network Policy Server Practices the "Informing" or "Informed" Limitations of the '702 Patent.

Under WSOU's theory, NPS servers are the accused "AAA functional nodes," and the accused system purportedly satisfies the limitations of the asserted claims.  Even assuming that such a configuration satisfies certain limitations of the claims, WSOU has failed to present evidence that the accused NPS software satisfies the "informing" limitation of Claim 1 or the "informed" limitation of claim 11, and has thus failed to adduce evidence showing infringement.

Both asserted independent claims of the '702 Patent require the claimed method or system to "inform" other entities that a new node is now an "active node."  Specifically, independent Claim 1 requires "*informing* the plurality of nodes that the node selected [in the step above] has its AAA functions activated" and independent Claim 11 requires that when "another of the plurality of nodes is selected to be an active node [] the network [is] *informed* thereof."

---

[2] A "RADIUS client" is a device (often a "network access server," or "NAS") that sends connection requests and accounting messages to a RADIUS server so that, for example, a user can connect to a network.  A "RADIUS server" is a piece of software that implements the RADIUS protocol and performs AAA functionality.  (*See* DeKok Op. Rept., ¶¶98-104; McClellan Inf. Rept., ¶91.)

There is no genuine dispute that NPS does not practice this "informing" step.  As Mr. DeKok, Microsoft's expert, explained in his report, NPS servers do not inform other RADIUS servers of anything, including whether another server "has its AAA functions activated." (*See, e.g.*, DeKok Rebuttal Rept., ¶¶175, 274-280, 339.)  WSOU has advanced no evidence to the contrary.

Indeed, with respect to Claim 11, Dr. McClellan fails to address the "informing" limitation *at all*.  The section of his report directed to the broader limitation in which this requirement appears (McClellan 702 Inf. Rept., ¶¶142-151), contains no discussion of how "the network" is "inform[ed]" that a node has been selected to be an active node.  Likewise, there is no such discussion in the infringement contentions that he incorporates by reference, nor in his discussion of the source code he cites in connection with this limitation.  (*See* McClellan 702 Inf. Rept., Ex. 3, pp. 44-50; ¶151; Appendix.)  Indeed, other than the recitation of the claim language itself, he does not use the word "informed" in his analysis of this claim limitation.  In light of Dr. McClellan's failure to address this limitation and Mr. DeKok's analysis that the accused software does not satisfy this claim limitation (*see, e.g.*, DeKok Rebuttal Rept., ¶¶339, 175, 275, 277), this Court should grant summary judgment of non-infringement of Claim 11 and its dependent asserted claims (12, 16, and 17).

With respect to the "informing" limitation of claim 1, Dr. McClellan opines that this limitation is satisfied when RADIUS *clients* are informed that a server has become unavailable:

> Microsoft's documentation shows that one of the NPS may be used as the primary RADIUS server while another is used as a backup. Each RADIUS client may configure on both NPS.  If the primary NPS becomes unavailable, RADIUS clients are informed so that they may then send Access-Request messages to the alternate NPS. This results in "informing the plurality of nodes that the node selected in step (d) has its AAA functions activated)," as recited in claim 1.

(McClellan 702 Inf. Rept., ¶116.)  This allegation is facially insufficient.  Even assuming that Dr. McClellan is correct, the "informing" identified in his report is that the primary NPS has become unavailable, not that another node has had its RADIUS functionality activated.

And in any event, "informing" RADIUS clients is insufficient to satisfy this limitation because clients are not "AAA function capable" and thus cannot be the claimed "plurality of nodes" that must be informed.  *See* '702 patent, cl. 1.  Indeed, Dr. McClellan himself opined that clients are not part of the claimed AAA functionality.  (McClellan 702 Valid. Rept., ¶89) ("client-side failover processes [of RADIUS are] part of the client implementation, *and not part of the 'AAA functionality'* of the network as disclosed in the '702 patent"); *see also* McClellan Dep., 63:17-64:7 (refusing to state if a RADIUS client is AAA function capable).)

Moreover, Dr. McClellan's opinion is also deficient because the claimed "plurality of nodes" that must be notified comprise RADIUS *servers*.  Claim 1 requires both "selecting *two* of the plurality of nodes to be active nodes" and "activating the AAA functions of the active nodes." Dr. McClellan opines that these two active nodes are NPS *servers*.  (McClellan 702 Inf. Rept., ¶¶94-103)  Therefore one of these servers must be "informed" when the other server is disconnected in order to satisfy this limitation.  But Dr. McClellan's infringement analysis for this limitation is based entirely on "informing" *clients*; he offers no evidence that NPS *servers* are ever informed that other servers are unavailable or activated.

Finally, Dr. McClellan's assertion that clients are "informed" is nothing more than *ipse dixit*.  At his deposition Dr. McClellan could identify no message purportedly sent (or mechanism for sending such a message) to these clients.  (McClellan Dep., 50:22-51:13 (confirming that clients do not receive any message stating that a server is unavailable).) Instead, Dr. McClellan testified that a RADIUS proxy was capable of informing *itself* of which

servers were active.  (*See id.*, 52:6-54:14.)  And Dr. McClellan could not identify any mechanism

by which that proxy could send this server group list to another client or server.  (*Id.*, 54:15-

56:19.)  As Mr. DeKok confirmed, there is no such mechanism by which NPS "informs" any

other entity regarding the status of an NPS server.  (*See, e.g.*, DeKok Rebuttal Rept., ¶¶274-280,

175).  Summary judgment of non-infringement on claim 1 and its dependent asserted claims

(claims 3, 4, 8, and 10) is therefore appropriate.

## III.    MICROSOFT DOES NOT INFRINGE THE '160 PATENT

### A.    The '160 Patent

The '160 Patent—titled Method of Determining Service Trends—explains that in the

prior art there were "no tools for forecasting accurately the failure of a network service."  ('160

Patent, Title, 1:24-25.)  The patent proposes addressing this issue via a multi-step method.  The

steps relevant here are—(1) "determining a trend of the indicator as a function of said

determined indicator values" and (2) "determining as a function of the trend of the indicator a

time of the service indicator crossing a defined threshold."  (*Id.*, Claim 1.)

### B.    The Accused Feature: Azure Monitor's Dynamic Thresholds

WSOU accuses Azure Monitor's Dynamic Thresholds of infringing the asserted claims.[3]

Azure Monitor is software that allows users of Microsoft's cloud platform, Azure, to monitor

their resources running on Azure.  Azure resources include virtual versions of physical devices,

such as "virtual" servers that can be deployed as needed.  (Coates Rebuttal Rept., ¶31.)

Azure Monitor collects data called "Metrics" about resources running on Azure.

(McClellan 160 Inf. Rept., ¶¶101-102).  It also allows users to set alerts for Metrics that fire

---

[3] *See, e.g.*, McClellan 160 Inf. Rept. Ex. 3, pp. 22-23, 25-26 (charts "incorporated by reference"
identifying source code for Dynamic Thresholds and with text corresponding to ¶¶118, 125-27 of
the report ); Ex. 4 (document discussing Dynamic Thresholds cited in ¶¶123-124 of the report).

based on a Metric value.  (*Id.*, ¶122).  Thresholds can be static or "dynamic."  Dynamic Thresholds, according to Dr. McClellan, adapt to a Metric's behavior over time.  (*Id.*, ¶123 & Ex. 4).  Dynamic Thresholds-based alerts fire when there are "deviations from its pattern" or "deviation[s] from certain thresholds."  (*Id.*, ¶¶122-123).  Dr. McClellan depicts a Dynamic Threshold that varies in a regular pattern in his Report.  (*Id.*, ¶124 & Ex. 4).

### C.   There Is no Evidence that Azure Monitor or Dynamic Thresholds Practices the "Determining a Trend" Limitation of the '160 Patent.

Dr. McClellan opines that Azure Monitor practices the "determining a trend" limitation in Claim 1—specifically, he opines that it "determin[es] a trend" when it calls ███████████

██████████████████████████████████████████████████████████████

███████  (McClellan 160 Inf. Rept., ¶118, Ex. 3, p. 22.)  Dr. McClellan further opines ██████

██████████████████████████████████████████████████████

█████████████████  generally relate to "determining a trend."[4]  (*Id.* ¶119.)

There is no evidence that ████████████████████████████████████████████

show that Microsoft practices the "determining a trend" limitation.  This is because there is no genuine dispute that ████████████████████████  are ***not*** used in Dynamic Thresholds (or otherwise in Azure Monitor).

Dr. Mark Coates, Microsoft's technical expert, reviewed ████████████████████

███████  accused in Dr. McClellan's report, above, as meeting the "determining a trend" limitation.  As Dr. Coates states in his Declaration, ██████████████████████

████████████████████████████████████████████████

██████  (Coates Decl., ¶¶4-7.)  Dr. Coates determined that ██████████████  were not "deployed,

---

[4] The two other files are ██████████████████████████████████████

compiled, or otherwise used in Azure Monitor." (*Id.*, ¶9.) *First*, he found that in the source code

repository containing ███████████████████████████████████

███████████████████████████████████████ (*Id.*, ¶7.) *Second*,

Dr. Coates found that Dr. McClellan did not "provide[] any examples of the ██████ being

called by source code he identifies as practicing other limitations in the claim." (*Id.*) *Third*, Dr.

Coates found "the remaining code" in the source code repository ████████████████

█████████████ (*Id.*) *Fourth*, Dr. Coates found ██████████████████

██████████████████ identified by Dr. McClellan as practicing this

limitation. (*Id.*, ¶8.) *Finally*, Dr. Coates confirmed with Rachel Lemberg that none of the███

███████████ was used by Azure Monitor. (*Id.*, ¶9.) Ms. Lemberg was designated as

Microsoft's Rule 30(b)(6) witness on technical issues related to Dynamic Thresholds.

Because ███████████████ identified by Dr. McClellan as performing the

"determining a trend" limitation, as well as ████████████████████

identified in Dr. McClellan's report, are not used in Azure Monitor, WSOU has provided no

evidence that Microsoft practices the "determining a trend" limitation. Indeed, Dr. McClellan,

when asked at his deposition, could not identify ███████████████████

██████████████████ that allegedly performed the "determining a trend"

limitation. (McClellan Dep., 175:12-176:4.)

## IV.    CONCLUSION

Because WSOU has no evidence that Microsoft practices the "informing" limitation in

each asserted claim of the '702 Patent and the "determining a trend" limitation in each asserted

claim of the '160 Patent, it cannot show infringement of those claims. This Court should enter

judgment of non-infringement for Microsoft.

DATED: April 12, 2022

Respectfully submitted,

/s/ Richard A. Cederoth (by permission)

Melissa R. Smith, Bar No. 24001351
melissa@gillamsmithlaw.com
James "Travis" Underwood, Bar No.
24102587
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Michael J. Bettinger
mbettinger@sidley.com
Irene Yang
irene.yang@sidley.com
Brooke S. Boll
brooke.boll@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 772-1200
Fax: (415) 772-7400

Richard A. Cederoth
rcederoth@sidley.com
John W. McBride
jwmcbride@sidley.com
Richard M. Chen
rchen@sidley.com
Kevin Robert Oliver
kevin.oliver@sidley.com
**SIDLEY AUSTIN LLP**
1 South Dearborn St.
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

***ATTORNEYS FOR MICROSOFT
CORPORATION***

## <u>CERTIFICATE OF SERVICE</u>

I, Richard M. Chen, certify that on April 12, 2022, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned cases were subsequently served on all counsel of record by electronic mail.


DATED: April 12, 2022                              */s/ Richard M. Chen*

Richard M. Chen
rchen@sidley.com
**SIDLEY AUSTIN LLP**
1 South Dearborn St.
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

***ATTORNEY FOR MICROSOFT***
***CORPORATION***