**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | Civil Action No. 6:20-cv-454 <br> Civil Action No. 6:20-cv-461 |
| Plaintiff, | PUBLIC VERSION |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF THE
MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT OF
U.S. PATENT NOS. 7,106,702 AND 7,366,160**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................ 1

II.     MICROSOFT DOES NOT INFRINGE THE '702 PATENT ............................................ 1

      A.      WSOU's Cited Source Code Does Not Practice the "Informing" or "Informed" Limitations. ...................................................................................................................... 2

      B.      WSOU Arguments Regarding "Client-Side Failover Processes" Contradict Its Own Infringement Theory. ..................................................................................................... 5

      C.      There Is No Evidence That The Claimed "Plurality of Nodes" Or "Network" Are Informed. ................................................................................................................................ 6

III.    MICROSOFT DOES NOT INFRINGE THE '160 PATENT ........................................... 7

IV.     CONCLUSION................................................................................................................... 10

## LIST OF EXHIBITS

| Decl. Ex. | Document Name | Document Abbreviation |
|---|---|---|
| Chen Decl. Ex. A (Dkt. No. 133-2, 454 Case) | U.S. Patent No. 7,106,702 | '702 Patent |
| Chen Decl. Ex. B (Dkt. No. 133-3, 454 Case) | Excerpts of the Expert Report of Dr. Stan McClellan - Infringement of U.S. Patent No. 7,106,702 by Microsoft Corporation (Feb. 1, 2022)  Excerpts of Exhibit 3 of the Report | McClellan 702 Inf. Rept.  McClellan 702 Inf. Rept. Ex. 3 |
| Chen Decl. Ex. C (Dkt. No. 133-4, 454 Case) | Excerpts of the Expert Report of Dr. Stan McClellan Regarding Validity of U.S. Patent 7,106,702 (Mar. 1, 2022) | McClellan 702 Valid. Rept. |
| Chen Decl. Ex. E (Dkt. No. 133-6, 454 Case) | Excerpts of the Rebuttal Expert Report of Alan DeKok Regarding U.S. Patent No. 7,106,702 (Mar. 1, 2022) | DeKok Rebuttal Rept. |
| Chen Decl. Ex. F (Dkt. No. 133-7, 454 Case) | U.S. Patent No. 7,366,160 | '160 Patent |
| Chen Decl. Ex. G (Dkt. No. 133-8, 454 Case) | Excerpts of the Expert Report of Dr. Stan McClellan - Infringement of U.S. Patent No. 7,366,160 By Microsoft Corporation (Feb. 1, 2022)  Excerpts of Exhibits 3 & 4 of the Report | McClellan 160 Inf. Rept.  McClellan 160 Inf. Rept. Ex. 3 or Ex. 4 |
| Chen Decl. Ex. H (Dkt. No. 133-9, 454 Case) | Declaration of Mark Coates, dated Apr. 11, 2022 | Coates Decl. |
| Second Chen Decl. Ex. K | *Microsoft Corp. v. WSOU Investments, LLC*, Response to Petition, IPR2021-00930, | IPR Response |

ii

| | concerning U.S. Patent No. 7,106,702, (Feb. 23, 2022) | |
|---|---|---|
| Second Chen Decl. Ex. L | Additional excerpts of the Rebuttal Expert Report of Mark Coates Ph.D. Regarding U.S. Patent No. 7,366,160 (Mar. 1, 2022) | Coates Rebuttal Rept. |
| Second Chen Decl. Ex. M | Additional excerpts of the Testimony of Stan McClellan Ph.D. (Mar. 31, 2022) | McClellan Dep. |

## TABLE OF ABBREVIATIONS

| Dkt. No. | Document Name | Document Abbreviation |
|---|---|---|
| Dkt. No. 133 (-454 Case) | Microsoft's Motion for Summary Judgment of No Infringement of U.S. Patent Nos. 7,106,702 and 7,366,160 | MS Br. |
| Dkt. No. 153 (-454 Case) | WSOU's Memorandum of Law in Opposition to Defendant Microsoft Corporation's Motion for Summary Judgment of No Infringement of U.S. Patent Nos. 7,106,702 and 7,366,160 | Opp. |

## I.      INTRODUCTION

WSOU Investments, LLC ("WSOU") cannot meet its burden of proof on the claim that Microsoft Corporation ("Microsoft") allegedly infringes the asserted claims in U.S. Patent Nos. 7,106,702 and 7,366,160.  In both cases, Dr. Stan McClellan, WSOU's technical expert, fails to address each and every limitation of the asserted claims.

For the **'702 Patent**, Dr. McClellan failed to offer evidence showing that Microsoft practices the "informing"/"informed" limitations found in the asserted claims.  WSOU attempts to muddy the waters in its response by citing to Dr. McClellan's descriptions of certain source code files found in an appendix to his report.  But those descriptions are divorced from any analysis of the claim limitations themselves, and Dr. McClellan does not opine that *any* of this source code actually performs the "informing"/"informed" limitations.  In any event, WSOU's new argument that certain *client* devices are part of the claimed "plurality of nodes" that are "informed"—an argument directly in conflict with the testimony of Dr. McClellan—is unavailing.  WSOU's infringement theory requires "informing" all "nodes," including the accused *servers*, and Dr. McClellan never opines that these servers are "informed."

For the **'160 Patent**, Dr. McClellan's analysis simply rests on the wrong source code. His analysis of the "determining a trend" limitation found in all asserted claims rests on source code that WSOU does not dispute was never deployed or used in the accused software.  WSOU cannot meet its burden of proof on the issue of infringement.  This Court should therefore enter summary judgment of no infringement as to the asserted claims of the '702 and '160 Patents.

## II.     MICROSOFT DOES NOT INFRINGE THE '702 PATENT

WSOU contends that servers running Microsoft's Network Policy Server (NPS) constitute the accused "nodes" in each asserted claim.  Under WSOU's theory, when a new node is "activated," the asserted claims require either "informing" *all* of the "nodes" (Claim 1) or that

*all*[1] of the nodes be "informed" (Claim 11).  But WSOU does not dispute that these accused NPS

servers, which implement a prior art AAA[2] standard known as RADIUS, do not "inform" other

RADIUS servers of anything, and Dr. McClellan has never advanced an the opinion that these

NPS servers are "informed."  As Microsoft explained in its opening brief, WSOU's argument

that "informing" RADIUS *clients* (instead of the accused RADIUS servers) satisfies the

"informing" and "informed" limitations does not fix Dr. McClellan's theory because, as noted

above, the asserted claims require "informing" all the nodes.  (Dkt. No. 133 (454 Case, "MS

Br."), 4-5.)  There is no genuine dispute of material fact that the "informing" and "informed"

limitations are not met.  Summary judgment is therefore appropriate here.

A.      **WSOU's Cited Source Code Does Not Practice the "Informing" or "Informed" Limitations.**

Despite devoting more than a page of its opposition to listing source code files, functions,

parameters, and classes, WSOU never identifies a single instance where Dr. McClellan expressly

ties his description of the source code to the "informing" or "informed" limitations of the

asserted claims.  In fact, Dr. McClellan never opined that the various source code files even

*relate* to the "informing"/"informed" limitations.  Rather, when addressing these limitations, he

opined that various code files "perform functions related to *activating the AAA functions* of the

node selected in step (d)" or "perform functions related to *activating the AAA functions* of a

---

[1] To the extent WSOU is now attempting to argue that only some subset of the plurality of nodes needs to be informed, such argument is inconsistent with WSOU's arguments to the PTAB in related IPR proceedings.  There, WSOU argued to the PTAB that "the claim language expressly requires [that] . . . *each one of 'the plurality of nodes'*" is informed, and that it is insufficient that "the 'network' in general is informed (as opposed to each one of the 'plurality of nodes' in particular)).  IPR Response, 52 (emphasis added).

[2] AAA is an acronym for Authentication, Authorization, and Accounting.  AAA functionality "authentication verifies a user's identity; authorization determines if a user can access network resources; and accounting collects user data."  (MS Br., 2.)

subset of nodes." (McClellan 702 Inf. Rept., ¶¶117, 151.) The "activating" steps are entirely different limitations of the claims, separate from the "informing" and "informed" limitations. (*See, e.g.*, '702 Patent, Claim 1; McClellan 702 Inf. Rept., ¶¶112-117 (addressing steps (e) and (f) separately).)

WSOU sidesteps the fact that Dr. McClellan connected this source code to a different claim limitation by suggesting that his descriptions of the source code files ███████████ ██████████████████████████████████████████████████████████ ████████████████ demonstrate that he opined that the accused NPS software and system "practice the 'informing'/'informed' limitations." (Opp., 2-4.) But, as the excerpts in the opposition show, the word "informing" or "informed" does not appear in Dr. McClellan's analysis of these files, and he does not explain how these files practice (if at all) the "informing" or "informed" limitations.

For example, as explained in Microsoft's opening brief, Dr. McClellan never analyzed the clause that contains the "informed" limitation of Claim 11. (MS Br., 4.) WSOU now attempts to remedy this omission by expressly calling out the source code file ████████████ meeting the "informed" limitation. (Opp., 4.) But as the excerpts in the opposition again show, Dr. McClellan never identified anything in this source code file as practicing the "informed" limitation. Indeed, the description of the ████████████████ in Dr. McClellan's report suggests (but does not state) that it relates to an entirely different limitation—"monitoring," as he opined that it "[d]efines functions which ***create, manage, and monitor availability*** for remote servers and groups of servers which provide AAA services." (McClellan 702 Inf. Rept., ¶151 (emphasis added).) It is perplexing that WSOU now contends the file relates to the "informed" limitation. ('702 Patent, Claim 11.) Also perplexing is the fact that in connection with the analogous

"informing" limitation of Claim 1, Dr. McClellan does not even *list* the ▮▮▮▮▮▮▮▮▮

(McClellan 702 Inf. Rept., ¶117.)

Other source code files specifically called out in WSOU's opposition, ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ do not have any identified relationship to

the "informing" or "informed" limitations either.  For example, Dr. McClellan's description of

the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are identical for every relevant limitation of

Claim 1,[3] and his description of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ only slightly differs

between the relevant limitations of Claim 1.[4]  In any event, in these descriptions, Dr. McClellan

never explains if or how these files practice the "informing" or "informed" limitations.

Nor does Dr. McClellan's description of these source files in the appendix to his report

cure these deficiencies.  Dr. McClellan identifies the same source code file for multiple claim

limitations, yet the appendix provides the same description for each file, unconnected to any

limitations.  (*See* McClellan 702 Inf. Rept., App'x A.6, A.7, A.8, A.9, A.10, A.11, A.12).)

WSOU bears the burden of proof on infringement; it cannot create a genuine dispute of material

fact by forcing Microsoft and the Court to guess how claim limitations might (or might not) be

met based on Dr. McClellan's undifferentiated, generalized comments about source code that

may (or may not) apply equally to multiple distinct limitations in multiple claims.

---

[3] McClellan 702 Inf. Rept., ¶¶97, 102, 106, 111, 114, 117 (▮▮▮▮▮▮▮▮▮▮); ¶¶106, 111, 114, 117 (▮▮▮▮)

[4] McClellan 702 Inf. Rept., ¶¶102, 106, 111, 117 (▮▮▮▮▮); ¶¶97, 102, 106, 111, 114, 117 (▮▮▮▮)

**B.      WSOU Arguments Regarding "Client-Side Failover Processes" Contradict
Its Own Infringement Theory.**

After Microsoft pointed out in its opening brief that Dr. McClellan never identified how

RADIUS servers are "informed."  (MS Br., 4-5.)  In its opposition, WSOU advances the new

argument that RADIUS clients are "AAA function capable" nodes that are "informed,"

notwithstanding Dr. McClellan's testimony to the contrary.  (McClellan Dep., 64:5-7 ("Q:  So

that means [a network access server acting as a RADIUS client] is AAA function capable?  A:  I

wouldn't say it that way.").)  WSOU's attempt to distinguish the RADIUS client from the

RADIUS protocol's "client-side failover processes" is a distinction without a difference, as

WSOU's infringement theory is based on the very "client-side failover processes" that Dr.

McClellan argues is "not part of the 'AAA functionality of the network" as disclosed in the '702

patent."  (Opp., 5 (quoting McClellan 702 Valid. Rept., ¶89).)  There is no dispute that the

accused NPS software and system practices the RADIUS protocol.  And Dr. McClellan's theory

for how the "informing" limitation is met specifically describes RADIUS's client-side failover

process.  (*See, e.g.*, McClellan 702 Inf. Rept., ¶116 ("Each RADIUS client may configure on

both NPS.  If the primary NPS becomes available, RADIUS *clients are informed* so that *they*

may send Access-Request messages to the alternate NPS.").)  In other words, Dr. McClellan

opines that NPS infringes when a RADIUS server becomes unavailable, and RADIUS *clients* fail

over to a backup RADIUS server.  But then, Dr. McClellan turns around and asserts, for

purposes of invalidity, that the same accused client-side failover process is "not part of the 'AAA

functionality' of the network as disclosed in the '702 patent."  (McClellan Valid. Rept., ¶89.)

Self-contradiction does not create a genuine issue of material fact.  *See, e.g.*, *Hoover v. Bayer*

*Healthcare Pharm. Inc.*, No. 3:14-cv-05090, 2017 WL 2313178, at *2 (W.D. Mo. Mar. 24,

2017) ("Plaintiff is unable to create a genuine issue of material fact through the inconsistent statements of Plaintiff's own expert.").

> **C.** **There Is No Evidence That The Claimed "Plurality of Nodes" Or "Network" Are Informed.**

Assuming *arguendo* that RADIUS clients can be the AAA function capable "nodes" in the asserted claims, informing RADIUS clients alone still would not satisfy the requirement that the "plurality of nodes" recited in Claim 1 or the "network" recited in Claim 11 be "informed." As Microsoft explained in its opening brief, under WSOU's infringement theory, the claimed "plurality of nodes" and "network" necessarily include at least those RADIUS servers that are "activated," even if the "plurality of nodes" includes clients, as WSOU suggests.  (MS Br., 4-6.)

Specifically, Claim 1 requires "selecting two of the plurality of nodes to be active nodes," "activating the AAA functions of the active nodes," "monitoring the active nodes to determine if one of the active nodes gets disconnected from the network," and "informing the plurality of nodes" of the activation of the AAA functions of another node only after such disconnection. ('702 patent, Claim 1.)  Similarly, Claim 11 requires that the active nodes "monitor[] one another to detect if an active node becomes disconnected from the network, wherein when one is determined to be disconnected from the network another of the plurality of nodes is selected to be an active node and the network informed thereof."  (*Id.*, Claim 11.)  Throughout Dr. McClellan's report, he identifies only RADIUS servers (NPS servers) as the nodes that have their AAA functions activated and are monitored for disconnection from the network.  (*See* McClellan 702 Inf. Rept., ¶¶100-101 (opining the "activating" limitation is met because "NPS servers can be used as a RADIUS server[,]" and "whenever NPS servers are setup [sic] as RADIUS servers, they become AAA functional."); *id.*, ¶105 (opining the "monitoring" limitation is met because NPS "has failover settings that provide a way to determine whether the remote

6

RADIUS server is unavailable"); *id.*, ¶¶109-110, 149 (opining the "disconnect[ion]" limitation is met when "NPS determines that a RADIUS server is unavailable").)  Dr. McClellan's report never mentions the monitoring, disconnection, or activation limitation in connection with a RADIUS client, nor has WSOU ever advanced such an infringement theory.  Therefore, even if RADIUS clients could comprise part of the claimed "plurality of nodes" and "network," the "informing" and "informed" limitations cannot be satisfied under WSOU's infringement theory unless the RADIUS servers are also informed.  Here, there simply is no evidence that shows that the RADIUS servers are "informed."  (DeKok Rebuttal Rept., ¶¶175, 274-280, 339.)

## III.   MICROSOFT DOES NOT INFRINGE THE '160 PATENT

WSOU does not dispute that its entire infringement case rests on source code that is not used in the accused Azure Monitor software.  Summary judgment of non-infringement is therefore appropriate.  The asserted claims of the '160 Patent require a user to "determin[e] a trend of the [service] indicator."  ('160 Patent, Claim 1.)  WSOU contends that this step, which is present in all asserted claims, is satisfied when a user invokes a source code ███████████ ██████████████████ which resides in a ███████████████████████████ (MS Br., 7.)

Not only is the accused source code ██████████████████ not used in Azure Monitor, the ***entire source code*** ███████████████████ is not used in Azure Monitor.  (MS Br., 7.)  As Dr. Mark Coates, Microsoft's technical expert, explains in his declaration, the three source code files[5] that WSOU's technical expert, Dr. Stan McClellan,

---

[5] Because the three source code files that Dr. McClellan identified in his report as related to "determining a trend" were written in the ████████████████████, they are collectively referred to as the "████████" in Microsoft's opening brief and in Dr. Coates's declaration.

Dr. McClellan's report identifies six source code files in the section addressing the "determining a trend" limitation.  Dr. McClellan only opines that the ████████████ relate to "determining

analyzed in his report as related to the "determining a trend" limitation are not "deployed, compiled, or otherwise used in Azure Monitor."  (Coates Decl., ¶9, *see also id*., ¶¶5-6 (same)) Dr. Coates's declaration and report further explain that these source code files are not even connected to any of the other source code files that Dr. McClellan analyzed with respect to the other limitations of the asserted claims.  (Coates Decl., ¶7 (stating Dr. McClellan does not identify how the files are connected); ¶8 ( ███████████████████████████████████████ ███████████ that are not called by any files that I could identify outside of the isolated [] folder in which they are located"); *see also* Coates Rebuttal Rept., App'x C [A.21], [A.22], [A.26]).)

WSOU does not dispute any of these facts in its opposition.  Instead, it contends that there are un-named source code functions in the un-used ████████████████████████ and "[o]ther modules" that practice "determining a trend."  (Opp., 7)  But WSOU did not dispute that the ███████████████████████ is not used in the accused Azure Monitor software, or that the two other files analyzed in Dr. McClellan's report as related to the "determining a trend" limitation also are not used in the accused Azure Monitor software.  Because the source code files are not used, it is irrelevant what they may or may not do.  The bottom line is that source code that is not used in the accused Azure Monitor software cannot support a claim of infringement directed to functionality in Azure Monitor.

WSOU's reliance on Dr. Coates's opinion that the un-used files were generally "re-written" (Opp., 8) is similarly irrelevant.  To start, WSOU should have analyzed the deployed source code, not the un-used source code.  In any event, Dr. Coates never opined that the accused source code function was preserved in the deployed source code, and, in fact, opined that the

---

a trend."  The remaining three files are not identified as "determining a trend." (McClellan 160 Inf. Rept., ¶119.)

accused ███████████████████████████ was ***already disabled*** even in the

████████████████████████[6] (*See* Coates Rebuttal Rept., ¶¶163-64 (████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████).)

Finally, WSOU's attempt to smuggle a doctrine of equivalents theory into this case fails

under settled caselaw.  In *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, the Federal

Circuit explained that to establish infringement under the doctrine of equivalents:

> [A] patentee must still provide particularized testimony and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented . . . . Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

90 F.3d 1558, 1567 (Fed. Cir. 1996).  "These evidentiary requirements assure that the fact finder

does not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful

structural and functional limitations of the claim on which the public is entitled to rely in

avoiding infringement."  *Texas Instruments*, 90 F.3d at 1567 (quotations omitted).

Here, Dr. McClellan's analysis contains no "particularized testimony" or "linking

argument."  Instead, it contains several quotations from the testimony of a Microsoft witness,

Ms. Rachel Lemberg, on generally creating "██████ models" and then summarily concludes

that "[t]his process is equivalent to determining a trend of a parameter or indicator as a function

of parameter or indicator values."  (Opp., 7-8.)  Dr. McClellan never provides the "why" or

---

[6] The note in the background of WSOU's opposition about Azure Monitor's ability to display data in a graph from which a user (not the software) may (or may not) visually discern potential trends in the data (Opp., 6) is irrelevant.  All parties agree this is non-infringing functionality. (*See* Dkt. No. 157, at 3 (454 Case) (In the '160 Patent "[t]he network parameters are not simply compared with thresholds or presented in graphical form to aid human decision-making processes, as had been previously done in the prior art."); McClellan Dep., 166:24-167:14 ("displaying historical data in a line graph" is "not determining a trend").).

"how."  This is the type of testimony that the *Texas Instruments* court cautioned against.  In fact, it is well known that there are numerous ███████ models, including those that are not "equivalent" to "determining a trend."  One example, as discussed in Dr. Coates's report, is █

████████████████████████████████████████████████ (Coates Rebuttal Rept., ¶166 (emphasis added).)

Summary judgment of non-infringement is appropriate.  At this stage in the case, source code that is not used in the accused Azure Monitor software and a statement from Dr. Coates's report about why that source code was never used in the accused software is not sufficient evidence for WSOU to meet its burden of proof on infringement.

## IV.    CONCLUSION

Because WSOU has no evidence that Microsoft practices the "informing"/"informed" limitations in each asserted claim of the '702 Patent and the "determining a trend" limitation in each asserted claim of the '160 Patent, it cannot meet its burden of proof on infringement of those claims.  This Court should enter judgment of non-infringement for Microsoft.


DATED: May 3, 2022                            Respectfully submitted,

                                              */s/ Richard A. Cederoth (by permission)*

                                              Melissa R. Smith, Bar No. 24001351
                                              melissa@gillamsmithlaw.com
                                              James "Travis" Underwood, Bar No.
                                              24102587
                                              travis@gillamsmithlaw.com
                                              **GILLAM & SMITH, LLP**
                                              303 South Washington Avenue
                                              Marshall, Texas 75670
                                              Tel: (903) 934-8450
                                              Fax: (903) 934-9257

                                              Michael J. Bettinger
                                              mbettinger@sidley.com

Irene Yang
irene.yang@sidley.com
Brooke S. Boll
brooke.boll@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 772-1200
Fax: (415) 772-7400

Richard A. Cederoth
rcederoth@sidley.com
John W. McBride
jwmcbride@sidley.com
Richard M. Chen
rchen@sidley.com
Kevin Robert Oliver
kevin.oliver@sidley.com
**SIDLEY AUSTIN LLP**
1 South Dearborn St.
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

***ATTORNEYS FOR MICROSOFT
CORPORATION***

**CERTIFICATE OF SERVICE**

I, Richard M. Chen, certify that on May 3, 2022 this document and related exhibits

(unless previously-filed or non-confidential) were filed under seal with the Clerk of Court via the

Court's CM/ECF system.  This documents and the applicable exhibits were subsequently served

on all counsel of record by electronic mail.


DATED: May 3, 2022                              */s/ Richard M. Chen*

                                               Richard M. Chen
                                               rchen@sidley.com
                                               **SIDLEY AUSTIN LLP**
                                               1 South Dearborn St.
                                               Chicago, IL 60603
                                               Tel: (312) 853-7000
                                               Fax: (312) 853-7036

                                               ***ATTORNEY FOR MICROSOFT
                                               CORPORATION***