**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | Civil Action No. 6:20-cv-454 Civil Action No. 6:20-cv-461 Civil Action No. 6:20-cv-465 |
| Plaintiff, | |
| v. | PUBLIC VERSION |
| MICROSOFT CORPORATION, | |
| Defendant. | |

## MICROSOFT CORPORATION'S MOTIONS *IN LIMINE*

## <u>TABLE OF CONTENTS</u>

I.      MICROSOFT'S MARKET CAPITALIZATION, TOTAL REVENUE OR PROFITS, MICROSOFT'S TOTAL REVENUES OR PROFITS FOR AZURE, OR REVENUES, PROJECTIONS, OR SIZE OF THE GLOBAL OR NATIIONAL CLOUD OR SERVER MARKET ........................................................................................................... 1

II.     EITHER PARTY'S POSITIONS DURING CLAIM CONSTRUCTION ........................ 3

III.    SUGGESTION THAT MICROSOFT SHOULD HAVE OR DID NOT PRODUCE DOCUMENTS OR SOURCE CODE, OR SPECULATION REGARDING THE EXISTENCE OF UNPRODUCED DOCUMENTS ........................................................... 4

IV.     SECONDARY INDICIA OF NONOBVIOUSNESS ....................................................... 5

V.      DOCTRINE OF EQUIVALENTS ................................................................................... 8

VI.     INDUCED OR CONTRIBUTORY INFRINGEMENT .................................................. 10

VII.    EXPERT TESTIMONY OUTSIDE THE SCOPE OF DR. MCCLELLAN'S, DR. BRATIC'S, OR DR. BLOK'S REPORTS ..................................................................... 11

VIII.   ARGUMENT OR IMPLICATION THAT MICROSOFT HAD PRE-SUIT KNOWLEDGE OF THE ASSERTED PATENTS ........................................................... 11

IX.     USE OF ACCUSED FUNCTIONALITIES OR PRODUCTS AS DESCRIPTORS OF THE ASSERTED PATENTS ........................................................................................... 12

X.      UNRELATED LAWSUITS OR VERDICTS INVOLVING MICROSOFT .................... 13

XI.     IPCAPITAL GROUP, INC. VALUATION REPORT ................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accentra Inc. v. Staples, Inc.*,
No. CV 07–5862 ABC, 2010 WL 8450890 (C.D. Cal. Sept. 22, 2010)......................10, 11, 12

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
Civil Action No. 10-cv-00248, 2011 WL 7036048 (E.D. Va. July 5, 2011)...........................6

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
776 F.2d 281 (Fed. Cir. 1985)..........................................................................................6

*BMC Software, Inc. v. ServiceNow, Inc.*,
Case No. 2:14-CV-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016)...............................3

*Composite Res., Inc. v. Recon Med. LLC*,
Case No. 17-cv-01755-MMD-VCF,
2021 WL 5501104 (D. Nev. Nov. 22, 2021) ........................................................................4

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
Case No. 13-cv-01112-JRG, 2015 WL 12915561 ..................................................................5

*Datatreasury Corp. v. Wells Fargo & Co.*,
Civil Action No. 2:06-CV-72 DF,
2010 WL 11468934 (E.D. Tex. Oct. 5, 2010) .......................................................................13

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
Civil Action No. 6:11-CV-00201-JRG,
2017 WL 2773944 (E.D. Tex. May 26, 2017)..................................................................10, 11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)................................................................................1, 3, 14

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
Case No. 13-cv-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ...................11, 12

*Genband US LLC v. Metaswitch Networks Corp.*,
Case No. 2:14-cv-33-JRG-RSP,
2015 WL 12911530 (E.D. Tex. Sept. 30, 2015) ...................................................................5

*HTC Corp. v. Tech. Props. Ltd.*,
Case No. 5:08-CV-00882-PSG, 2013 WL 4782598 (N.D. Cal. Sept. 6, 2013).........................3

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
No. 2:16-cv-00052-JRG-RSP (E.D. Tex. Sept. 29, 2017), ECF No. 440.............................2, 3

*Implicit, LLC v. Trend Micro, Inc.*,
   No. 6:16-CV-00080-JRG (E.D. Tex. Oct. 3, 2017), ECF No. 253 .........................................2

*Key Energy Serv., Inc. v. C.C. Forbes, LLC*,
   No. 2:08-cv-346-CE, 2011 WL 7429433 (E.D. Tex. June 3, 2011) .........................................5

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d. 51 (Fed. Cir. 2012) ...........................................................................................1, 2

*Malta v. Schulmerich Carillons, Inc.*,
   952 F.2d 1320 (Fed. Cir. 1991) ...............................................................................................8

*MobileMedia Ideas, LLC v. HTC Corp.*,
   Case No. 2:10-cv-112-JRG, 2013 WL 12158524 (E.D. Tex. Apr. 24, 2013) ...........................3

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006) ...............................................................................................6

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
   Case No. 2:13-CV-213-JRG-RSP, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015) ......................3

*SimpleAir, Inc. v. AWS Convergence Techs., Inc.*,
   No. 2:09-CV-289 (E.D. Tex. Apr. 3, 2012), ECF No. 505 ........................................................2

*SSL Servs., LLC v. Citrix Sys., Inc.*,
   Civil Action No. 2:08-CV-158-JRG,
   2012 WL 12906091 (E.D. Tex. May 24, 2012) .................................................................10, 11

*Surface Joint Venture v. E.I. DuPont de Nemours & Co.*,
   No. A-02-CA-043-SS, 2003 WL 26101190 (W.D. Tex. Feb. 3, 2003) ....................................13

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) ..............................................................................................8, 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ..........................................................................................2, 14

**Rules & Statutes**

Fed. R. Civ. P. 26(a)(2)(B) .......................................................................................................11

Fed. R. Evid. 401 ..................................................................................................................1, 14

Fed. R. Evid. 402 ............................................................................................................. *passim*

Fed. R. Evid. 403 ............................................................................................................. *passim*

**LIST OF EXHIBITS**

| Ex.[1] | Document Name | Document Abbreviation |
|---|---|---|
| 1 | Excerpts from the Rebuttal Expert Report of Mark Coates Ph.D. Regarding U.S. Patent No. 7,366,160, March 1, 2022 | Coates 160 Rebuttal Rept. |
| 2 | Excerpts from the Expert Report of Stan McClellan, Ph.D. Regarding Validity of U.S. Patent No. 7,366,160, March 1, 2022 | McClellan 160 Valid. Rept. |
| 3 | Excerpts from the Expert Report of Stan McClellan, Ph.D. Regarding Validity of U.S. Patent No. 8,274,902, March 1, 2022 | McClellan 902 Valid. Rept. |
| 4 | Excerpts from the Expert Report of Stan McClellan, Ph.D. Regarding Validity of U.S. Patent No. 7,106,702, March 1, 2022 | McClellan 702 Valid. Rept. |
| 5 | Excerpts to the Expert Report of Justin R. Blok and Walter Bratic, February 1, 2022 | Blok Rept. |
| 6 | Excerpts from the Expert Report of Justin R. Blok and Walter Bratic, Appendix A – Azure Patents ('160 and '902 Patents), February 1, 2022 | Blok Rept. Appx. A |
| 7 | Excerpts from the Expert Report of Justin R. Blok and Walter Bratic, Appendix B – NPS Patent ('702 Patent), February 1, 2022 | Blok Rept. Appx. B |
| 8 | Excerpts from the Deposition of Stanley A. McClellan, March 31, 2022 | McClellan Dep. |
| 9 | Excerpts from the Expert Report of Dr. Stan McClellan – Infringement of U.S. Patent No. 8,274,902, February 1, 2022 | McClellan 902 Inf. Rept. |
| 10 | Excerpts from the Expert Report of Dr. Stan McClellan – Infringement of U.S. Patent No. 7,366,160, February 1, 2022 | McClellan 160 Inf. Rept. |
| 11 | Excerpts from Plaintiff WSOU Investments, LLC D/B/A Brazos Licensing and Development's Supplemental Objections and | WSOU Interrog. Resps. |

[1] All exhibits attached to the Declaration of Kevin Robert Oliver filed concurrently herein.

| Ex.[1] | Document Name | Document Abbreviation |
|---|---|---|
| | Responses to Defendant's First Set of Case-Specific Interrogatories, Case No. 6:20-cv-00454-ADA, April 4, 2022 | |
| 12 | Excerpts of Microsoft Corporation's Second Supplemental Responses and Objections to WSOU's First Set of Interrogatories [Nos. 1-7], March 15, 2022 | Microsoft Interrog. Resps. |
| 13 | Valuation Report by ipCapital Group, Inc. (MICAL-0003108-155) | ipCG Report |

Defendant Microsoft Corporation ("Microsoft") respectfully seeks an order precluding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU"), its counsel, and witnesses from mentioning, referring to, or offering any evidence or argument relating to any of the following matters within the hearing of any member of the jury during *voir dire* or at any time during trial.

## I.   MICROSOFT'S MARKET CAPITALIZATION, TOTAL REVENUE OR PROFITS, MICROSOFT'S TOTAL REVENUES OR PROFITS FOR AZURE, OR REVENUES, PROJECTIONS, OR SIZE OF THE GLOBAL OR NATIIONAL CLOUD OR SERVER MARKET

Microsoft respectfully requests that this Court preclude WSOU pursuant to Fed. R. Evid. 402 and 403 from presenting any argument, evidence, or testimony concerning (1) Microsoft's market capitalization, total revenue or profits; (2) Microsoft's total revenues or profits for Microsoft Azure; or (3) revenues, projections, or size of the global or national markets for cloud services or server operating systems.

Argument, evidence, or testimony concerning Microsoft's total revenue or profits and overall financial success undisputedly reflect the success of Microsoft's multitude of businesses and a broad range of technologies that have nothing to do with these cases. The allegations in this case concern Azure Monitor, Network Performance Monitor ("NPM"), Network Watcher, and the Network Policy Server ("NPS") feature of Windows Server. Microsoft's other non-accused products and services have nothing to do with either the asserted patents or the accused technology. Microsoft's market capitalization and total, company-wide revenues and profits do not reflect the value of the claimed inventions or the accused technology, and are therefore irrelevant. Fed. R. Evid. 401, 402; *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (damages "must reflect the value attributable to the infringing features of the [accused] product, and no more."); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51,

67-68 (Fed. Cir. 2012) ("Admission of such overall revenues . . . only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'") (internal quotation marks omitted).[2]

Not only are Microsoft's total revenues and profits and its overall financial success irrelevant, but if presented they would "skew the damages horizon for the jury, regardless of the contribution of the patented component" to Microsoft's overall financial condition, and no instruction could undo this prejudice. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). The information may cause the jury to calibrate any damage award against Microsoft's overall size, profits, and financial position, rather than tailoring the award to the specific contribution of the claimed inventions. For this reason, courts routinely preclude plaintiffs from discussing high-level financial information divorced from the accused technology. *See, e.g., SimpleAir, Inc. v. AWS Convergence Techs., Inc.*, No. 2:09-CV-289, Order on Mots. *in Limine* 1 (E.D. Tex. Apr. 3, 2012), ECF No. 505 (prohibiting plaintiff "from discussing the total revenue or profits of Defendants' products"); *Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-CV-00080-JRG, Order on Mots. *in Limine* 6 (E.D. Tex. Oct. 3, 2017), ECF No. 253 (precluding reference to defendant's "size, profits, or total value"); *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, Order on Mots. *in Limine* 11 (E.D. Tex. Sept. 29,

---

[2] For the same reason, WSOU should be precluded from referencing Microsoft's total profits or revenues for Microsoft Azure. Microsoft Azure is a cloud platform that offers many services, including database and storage services, networking, and specialized services for application development, machine learning and artificial intelligence, internet over things, mixed reality, game development, business insights, and virtual desktops. *See* Coates 160 Rebuttal Rept. ¶¶35-37. The accused Azure Monitor, NPM, and Network Watcher features are small services within the Azure cloud platform. The value of Microsoft's entire Azure platform is not relevant to any damages claim.

2017), ECF No. 440 (precluding evidence of "past annual revenue, estimated future annual revenue, or overall capital expenditures"); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, Case No. 2:13-CV-213-JRG-RSP, 2015 WL 627430, at *5 (E.D. Tex. Jan. 31, 2015) (granting motion to "exclude evidence of Samsung's size, wealth, total revenues or profits"); *MobileMedia Ideas, LLC v. HTC Corp.*, Case No. 2:10-cv-112-JRG, 2013 WL 12158524, at *3 (E.D. Tex. Apr. 24, 2013) (excluding reference to defendant's "total revenue or operating profits"); *HTC Corp. v. Tech. Props. Ltd.*, Case No. 5:08-CV-00882-PSG, 2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013) ("[R]ecent Federal Circuit case law does not permit the use of a company's overall size or revenue as a check to confirm the reasonableness of a jury award."). WSOU should be precluded from referencing Microsoft's total profits, revenues, and market capitalization, and it must "structure its damages presentation in such a way that the jury will not be able to calculate" Microsoft's total profits. *BMC Software, Inc. v. ServiceNow, Inc.*, Case No. 2:14-CV-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016).

For the same reasons, WSOU should be precluded from referencing the global or national markets for cloud services and server operating systems. Any evidence concerning global or national markets for these broad categories of technology is untied to the value of the claimed inventions or the accused technology (which make up a small fraction of Microsoft's Azure and Windows Server platforms, respectively), and should therefore be excluded pursuant to Fed. R. Evid. 402. *See Ericsson*, 773 F.3d at 1226.

## II.     EITHER PARTY'S POSITIONS DURING CLAIM CONSTRUCTION

Microsoft respectfully requests that this Court preclude WSOU from presenting evidence or argument regarding either party's positions during claim construction. The Court entered its

claim construction order on March 18, 2021. ECF No. 62.[3] Microsoft will not advance

arguments contrary to the Court's claim construction Order. Any reference to claim construction

positions that are no longer at issue would be irrelevant to any claim properly before the jury.

Moreover, to the extent WSOU suggests that the Court rejected any of Microsoft's previously

advanced claim construction positions, "the jury may improperly infer that [WSOU] is therefore

entitled to prevail on" the other issues. *Composite Res., Inc. v. Recon Med. LLC*, Case No. 17-cv-

01755-MMD-VCF, 2021 WL 5501104, at *5 (D. Nev. Nov. 22, 2021). The Court should

preclude WSOU from presenting such evidence under Fed. R. Evid. 402 and 403 to prevent the

waste of time, risk of jury confusion, and significant prejudice to Microsoft if such argument or

evidence is allowed.

### III.   SUGGESTION THAT MICROSOFT SHOULD HAVE OR DID NOT PRODUCE DOCUMENTS OR SOURCE CODE, OR SPECULATION REGARDING THE EXISTENCE OF UNPRODUCED DOCUMENTS

Microsoft respectfully requests that this Court preclude WSOU from providing any

evidence, testimony, attorney argument, comments, insinuation, reference, or assertions

concerning any alleged deficiencies in the parties' production of documents or source code, or

speculation regarding the existence of materials that were not produced, because these are

irrelevant to any issue being tried.

Microsoft has complied with all its discovery obligations. However, in recent briefing

regarding Microsoft's pending Motion to Exclude Improper Damages Opinions and Testimony

of WSOU's Experts, WSOU alleges that Microsoft has "withheld internal documents" and has

"failed to produce . . . documents that discuss how to split the benefit between the parties or for

evaluating patent contributions." WSOU's Opp'n to Mot. to Exclude at 7 n.2, 16-17 & n.3 (Apr.

---

[3] Unless otherwise noted, citations herein are to the docket in Case No. 6:20-cv-00454.

26, 2022), ECF No. 160. Not only did WSOU raise these purported "deficiencies" months after discovery had closed, but any discussions of discovery disputes that occurred between the parties or alleged discovery deficiencies are entirely irrelevant to the issues of infringement and validity for the jury to decide. Further, any such evidence or argument would confuse the jury and distract from the ultimate issues to be decided. Courts therefore frequently exclude such evidence and argument from trial. *See, e.g., ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, Case No. 13-cv-01112-JRG, 2015 WL 12915561, at *3 ("The parties shall not introduce any evidence or testimony, or make attorney argument, comments, insinuation, reference, or assertions concerning alleged deficiencies or failures in the parties' production of documents or other discovery (pursuant to any Federal or Local Rules concerning discovery) or litigation misconduct."); *Genband US LLC v. Metaswitch Networks Corp.*, Case No. 2:14-cv-33-JRG-RSP, 2015 WL 12911530, at *4 (E.D. Tex. Sept. 30, 2015) (granting "[m]otion to preclude evidence or argument related to discovery disputes."); *Key Energy Serv., Inc. v. C.C. Forbes, LLC*, No. 2:08-cv-346-CE, 2011 WL 7429433, at *4 (E.D. Tex. June 3, 2011) (same).

Because such evidence is irrelevant and would distract from the merits of the case in a manner confusing to the jury and unduly prejudicial to Microsoft, the Court should preclude, under Fed. R. Evid. 402 and 403, any reference to alleged discovery deficiencies in the parties' production of documents or source code.

## IV.  SECONDARY INDICIA OF NONOBVIOUSNESS

Microsoft respectfully requests that this Court preclude WSOU from presenting any argument, evidence, or testimony regarding secondary indicia of nonobviousness of the asserted patents because WSOU has not disclosed any evidence of the required nexus.

For U.S. Patent No. 7,366,160 ("the '160 Patent") and U.S. Patent No. 8,274,902 ("'902 Patent"), WSOU's technical expert, Dr. Stan McClellan, asserts in conclusory fashion that Azure

Monitor, Network Watcher, and NPM have been commercially successful. *See* McClellan 160 Valid. Rept. ¶¶ 295-96; McClellan 902 Valid. Rept. ¶ 110. For U.S. Patent No. 8,274,902 ("the '702 Patent"), Dr. McClellan describes purported industry praise for "Microsoft's Network Access Protection ('NAP') solution[,]" an unaccused feature of Windows Server that was deprecated in Windows Server 2012 and removed in Windows Server 2016. *See* McClellan 702 Valid. Rept. ¶¶ 240-43. WSOU should not be able to present argument, evidence, or testimony related to secondary indicia of nonobviousness because there is no evidence that the purported secondary indicia identified by Dr. McClellan have a nexus to the claimed inventions. "[F]or secondary considerations to have *relevance* and weight in an obviousness analysis, the patentee must demonstrate that the asserted considerations have a nexus to the merits of the claimed invention." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, Civil Action No. 10-cv-00248, 2011 WL 7036048, at *6 (E.D. Va. July 5, 2011) (citing *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 n. 42 (Fed. Cir. 1985)) (emphasis added); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Here, WSOU has failed to demonstrate any such nexus.

For the '160 and '902 patents, Dr. McClellan asserts, without evidence, that WSOU "is entitled to a rebuttable presumption of nexus" because the respective accused products are allegedly "coextensive with the patented invention[s]." McClellan 160 Valid. Rept. ¶ 296; McClellan 902 Valid. Rept. ¶ 110. However, Dr. McClellan's own deposition testimony belies this assertion.  For example, it is undisputed that "[l]ogs in Azure Monitor are capable of consolidating data from multiple sources into a single workspace and perform sophisticated

analysis to identify critical patterns." Blok Rept. Appx. A ¶ 18. But Dr. McClellan testified that the claims of the '160 patent do not cover the use of logs or storing data. McClellan Dep. 139:10-12 ("I don't see where the making use of logs is anywhere related to the claim language."), 136:22-23 ("The claim has nothing to do with logs or storage of data, as we previously discussed.").

Similarly, regarding the '902 patent, Dr. McClellan's report refers to Microsoft documentation stating that NPM can "[m]onitor loss and latency across various subnets and set alerts." McClellan 902 Inf. Rept. ¶ 21. The '902 patent claims recite collecting packet loss data and estimating packet loss rate, but say nothing about latency or setting alerts. And Dr. McClellan testified that loss and latency are two distinct concepts, and that "setting an alert" is not the same as collecting loss data or estimating packet loss rate. McClellan Dep. 198:8-199:3; *see also id.*, 199:15-23 ("Claim 1 of the '902 patent . . . doesn't say anything about alerts."). Because the accused products include features that are undisputedly not covered by the '160 and '902 patents, there is no "rebuttable presumption of nexus" as Dr. McClellan asserts.

Dr. McClellan does not even attempt to demonstrate a nexus between the "industry praise" for the unaccused NAP feature and the '702 patent, nor does he argue that WSOU is entitled to a rebuttable presumption of nexus to this patent. Accordingly, because WSOU has not established a nexus between the purported secondary indicia of nonobviousness and the asserted patents, any argument, evidence, or testimony related thereto is irrelevant and should be precluded. Fed. R. Evid. 402. Furthermore, it would be unfairly prejudicial under Fed. R. Evid. 403 to allow WSOU to present previously undisclosed theories or evidence regarding secondary considerations for the first time at trial.

## V.     DOCTRINE OF EQUIVALENTS

Microsoft respectfully requests that this Court preclude WSOU from presenting any

argument, evidence, or testimony regarding alleged infringement under the doctrine of

equivalents. WSOU cannot present an infringement case under the doctrine of equivalents

because its expert failed to provide "particularized testimony" or "linking argument as to the

'insubstantiality of the differences' between the claimed invention and the accused device or

process[.]" *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.

Cir. 1996).

While Dr. McClellan's reports include a section setting forth the legal standard for the

doctrine of equivalents, *see, e.g.*, McClellan 160 Inf. Rept. ¶¶ 57-58, his infringement analysis

contains little more than boilerplate statements regarding infringement under the doctrine. *See,

e.g.*, *id.* ¶ 82 ("Any claim element not literally present in the Microsoft Instrumentalities, as set

forth below, is found in those Instrumentalities under the doctrine of equivalents because any

differences between such claim element and the Microsoft Instrumentalities are insubstantial

and/or the Accused Instrumentalities perform substantially the same function, in substantially the

same way to achieve substantially the same result as the corresponding claim element(s).").  This

generic statement, repeated for various claim elements throughout each of Dr. McClellan's

infringement reports for the '160, '702, and '902 patents, fails to explain *what* differences exist

between the accused product and the claims of the patent or *why* such differences are

insubstantial. *Texas Instruments*, 90 F.3d at 1567. Nor do these statements identify the function,

way, and result for the accused product and claims, or explain *why* they are substantially the

same. *See Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1327 n.5 (Fed. Cir. 1991)

("While *Lear Siegler* does not go so far as to require recitation of the magic words 'function',

'way', and 'result', we think that it at least requires the evidence to establish what the function,

way, and result of both the claimed device and the accused device are, and why those functions,

ways, and results are substantially the same.").

In response to Microsoft's Motion for Summary Judgment of No Infringement, WSOU

argues that Azure Monitor practices the '160 Patent's "determining a trend" limitation under the

doctrine of equivalents. *See* WSOU Opp'n to Mot. for Summary Judgment of Infringement 7-8

(Apr. 26, 2022), ECF No. 153 (quoting McClellan 160 Inf. Rept. ¶ 120) ("This process *is*

*equivalent to* determining a trend of a parameter or indicator as a function of parameter or

indicator values, as described in the claim language.") (emphasis added). As explained in

previous briefing, WSOU's attempt to rely on the doctrine of equivalents theory in this case is

precluded by binding Federal Circuit law. *See* Microsoft Reply in Support of Mot. for Summary

Judgment of No Infringement 9-10 (May 3, 2022), ECF No. 168. Dr. McClellan's report

contains several quotations from the testimony of a Microsoft witness on generally creating

"statistical models" and then concludes, without any explanation, that "[t]his process is

equivalent to determining a trend of a parameter or indicator as a function of parameter or

indicator values." McClellan 160 Inf. Rept. ¶ 120. But this is precisely the type of "[g]eneralized

testimony as to the overall similarity between the claims and the accused infringer's product or

process" that the Federal Circuit has held will not suffice to establish infringement under the

doctrine of equivalents. *Texas Instruments*, 90 F.3d at 1567.

Permitting WSOU to introduce a doctrine of equivalents theory would run afoul of the

evidentiary requirements set forth in *Texas Instruments*, which "assure that the fact-finder does

not, 'under the guise of applying the doctrine of equivalents, erase a plethora of meaningful

structural and functional limitations of the claim on which the public is entitled to rely in

avoiding infringement.'" *Id.* (citation omitted). It would also be unfairly prejudicial under Fed.

R. Evid. 403. The Court should therefore preclude WSOU from presenting any argument, evidence, or testimony related to such a theory for any of the asserted patents.

## VI.    INDUCED OR CONTRIBUTORY INFRINGEMENT

Microsoft respectfully requests that this Court preclude WSOU from presenting any argument, evidence, or testimony regarding induced infringement or contributory infringement. Although WSOU's complaints in these cases request findings of induced infringement and contributory infringement, WSOU failed to set forth any theory of inducement or contributory infringement of any of the three asserted patents.  Microsoft served interrogatories specifically asking WSOU to "describe[e] Microsoft's acts that [WSOU] alleges contribute to or are inducing . . . direct infringement, and identifying all Documents and Persons that support [WSOU's] contentions." WSOU Interrog. Resps. 3-4 (Interrog. No. 5). In response, WSOU did not identify any contributory or inducing acts, and instead incorporated by reference Dr. McClellan's infringement reports. *Id*.

For his part, Dr. McClellan included a section setting forth the legal standards for indirect infringement in his reports, *see, e.g.*, McClellan 160 Inf. Rept. ¶ 59, but never opines that Microsoft induces or contributes to the infringement of any of the asserted patents, or indeed identifies any purported direct infringer other than Microsoft. The Court should not permit WSOU to introduce a new infringement theory for the first time at trial.  *See, e.g.*, *Eidos Display, LLC v. Chi Mei Innolux Corp.*, Civil Action No. 6:11-CV-00201-JRG, 2017 WL 2773944, at *1 (E.D. Tex. May 26, 2017) ("No expert will express opinions during direct examination that were not disclosed in their expert reports."); *SSL Servs., LLC v. Citrix Sys., Inc.*, Civil Action No. 2:08-CV-158-JRG, 2012 WL 12906091, at *1 (E.D. Tex. May 24, 2012) ("All expert testimony shall be limited to topics and subject matter actually disclosed in reports or testified to in response to opposing party questions raised during the expert's deposition."); *Accentra Inc. v.*

10

*Staples, Inc.*, No. CV 07–5862 ABC (RZx), 2010 WL 8450890, at *6 (C.D. Cal. Sept. 22, 2010)

(granting motion *in limine* to preclude pursuit of induced infringement and contributory

infringement theories that "were never pled in [plaintiff's] complaint, never provided in five

iterations of [plaintiff's] infringement contentions, and not pursued during discovery."); *Finjan,*

*Inc. v. Blue Coat Sys., Inc.*, Case No. 13-cv-03999-BLF, 2015 WL 3640694, at *2 (N.D. Cal.

June 11, 2015) ("If the theory is new, prejudice is 'inherent in the assertion of a new theory after

discovery has closed.'") (citation omitted); Fed. R. Evid. 403.

## VII.   EXPERT TESTIMONY OUTSIDE THE SCOPE OF DR. MCCLELLAN'S, DR. BRATIC'S, OR DR. BLOK'S REPORTS

Microsoft respectfully requests that the Court preclude WSOU pursuant to Fed. R. Civ. P.

26(a)(2)(B) from offering expert testimony concerning any subject which is outside the scope of

its experts' reports. Fed. R. Civ. P. 26(a)(2)(B); *see also Eidos*, 2017 WL 2773944, at *1; *SSL*,

2012 WL 12906091, at *1.  Furthermore, it would be unfairly prejudicial under Fed. R. Evid.

403 to allow WSOU to present previously undisclosed theories or evidence for the first time at

trial.

## VIII.   ARGUMENT OR IMPLICATION THAT MICROSOFT HAD PRE-SUIT KNOWLEDGE OF THE ASSERTED PATENTS

Microsoft respectfully requests that the Court preclude WSOU from presenting any

argument, evidence, or testimony suggesting that Microsoft had pre-suit knowledge of any of the

asserted patents. Belated disclosure at trial would be irrelevant, unfairly prejudicial and mislead

the jury.

WSOU's complaints do not allege willful infringement and only allege that Microsoft

"received notice and actual or constructive knowledge" of the asserted patents as of the date of

the complaints. Am. Compl. ¶ 61 (Apr. 5, 2021), ECF No. 73. Microsoft confirmed that it had no

pre-suit knowledge of the asserted patents in its interrogatory responses, Microsoft Interrog.

Resps. 36-37 (Interrog. No. 7), and WSOU has never suggested otherwise in any of its infringement contentions, interrogatory responses, or expert reports. Accordingly, the Court should not permit WSOU to introduce any theory of pre-suit knowledge for the first time at trial. *See, e.g.*, *Accentra*, 2010 WL 8450890, at *6; *Finjan*, 2015 WL 3640694, at *2.

## IX. USE OF ACCUSED FUNCTIONALITIES OR PRODUCTS AS DESCRIPTORS OF THE ASSERTED PATENTS

Microsoft respectfully requests that the Court preclude WSOU pursuant to Fed. R. Evid. 403 from using the accused functionalities or products in these cases as descriptors of the asserted patents.

In its briefing and expert reports, WSOU has referred to the '160 and '902 patents as the "Azure Patents" and the '702 patent as the "NPS Patent." *See, e.g.*, Blok Rept. ¶ 9. WSOU should not be allowed to refer to the asserted patents as such in the presence of the jury, as this would confuse or mislead to jury into believing that the claims of the asserted patents are directed at the accused products or functionalities. There is no mention of Azure, or even "cloud" services, in the '160 or '902 patents.  Similarly, the '702 patent never mentions NPS or RADIUS, the AAA protocol that NPS implements. None of the three patents is directed toward any Microsoft product. Any attempt by WSOU to apply its self-serving labels of the asserted patents in front of the jury would be a blatant attempt to confuse and mislead the jury into believing that the accused products and functionalities practice the patents, suggesting that WSOU is entitled to a finding of infringement.  WSOU should be precluded from referring to the Asserted Patents as being related to anything beyond what the claim language and the Court's claim constructions allow.

## X.       UNRELATED LAWSUITS OR VERDICTS INVOLVING MICROSOFT

Microsoft respectfully requests that the Court preclude WSOU pursuant to Fed. R. Evid. 402 and 403 from presenting any argument, evidence, or testimony concerning lawsuits or verdicts involving Microsoft other than the three related lawsuits that are the subject of this trial.

The jury is being asked to determine the issues of infringement and invalidity for the '160, '902, and '702 patents. Extraneous lawsuits have no relevance to these issues, and introduction of any argument, evidence, or testimony related to such lawsuits would risk creating an unnecessary side show or "trial within a trial" on matters wholly unrelated to the patents-in-suit, wasting the time and resources of both the parties and the Court. *See* Fed. R. Evid. 403. The Court should therefore preclude WSOU from presenting any such evidence. *See Datatreasury Corp. v. Wells Fargo & Co*., Civil Action No. 2:06-CV-72 DF, 2010 WL 11468934, at *24 (E.D. Tex. Oct. 5, 2010) ("[E]vidence of other litigation offered to prove Defendant's liability, willfulness, or the extent of damages should be excluded pursuant to at least Federal Rules of Evidence 403, 404, and 408 unless such litigation is directly relevant to the patents in suit or is otherwise shown to be relevant to issues raised at trial.") (citation omitted); *Surface Joint Venture v. E.I. DuPont de Nemours & Co.*, No. A-02-CA-043-SS, 2003 WL 26101190, at *1 (W.D. Tex. Feb. 3, 2003) (granting motion *in limine* as to evidence of defendant's unrelated litigation).

## XI.      IPCAPITAL GROUP, INC. VALUATION REPORT

Microsoft respectfully requests that this Court preclude WSOU pursuant to Fed. R. Evid. 402 and 403 from presenting any argument, evidence, or testimony concerning the October 31, 2018 third-party valuation report prepared by ipCapital Group, Inc. ("ipCG Report") that WSOU produced in these cases. The ipCG Report bears no relation to the asserted patents or the accused

technologies, and presenting the ipCG Report as a professionally-prepared or formal financial document runs the risk of overstating its relevance and misleading the jury.

WSOU's damages experts refer to the ipCG Report in their consideration of *Georgia-Pacific* Factor No. 12. *See, e.g.*, Blok Rept. Appx. A ¶¶ 155-57; Blok Rept. Appx B ¶¶ 145-49. WSOU apparently intends to rely on the ipCG Report at least to downplay the comparability of a license ███████████████, as purported evidence that ████████████ ██████████████████████████████ and to suggest that there was ██████ ████████████████████████ *See* WSOU's Mot. to Exclude 8 (Apr. 12, 2022), ECF No. 134. This is improper. The ipCG Report ████████████████ ████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████ ████████████████████████████████

Finally, the ipCG Report was focused on ████████████████████████████, not ████ as WSOU apparently intends to suggest.

Because the ipCG Report bears no relation to the asserted patents or the accused technologies, any argument, testimony, or evidence related thereto would be irrelevant and should be excluded. Fed. R. Evid. 401, 402; *Ericsson,* 773 F.3d at 1226; *Uniloc*, 632 F.3d at 1315 ("An additional consideration under Rule 702—*and another aspect of relevancy*—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.") (emphasis added) (internal quotation marks and citation omitted).

DATED: May 17, 2022

Respectfully submitted,

*/s/ Melissa R. Smith*

Melissa R. Smith, Bar No. 24001351
melissa@gillamsmithlaw.com
James "Travis" Underwood, Bar No.
24102587
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Michael J. Bettinger
mbettinger@sidley.com
Irene Yang
irene.yang@sidley.com
Brooke S. Boll
brooke.boll@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 772-1200
Fax: (415) 772-7400

Richard A. Cederoth
rcederoth@sidley.com
John W. McBride
jwmcbride@sidley.com
Richard M. Chen
rchen@sidley.com
Kevin Robert Oliver
kevin.oliver@sidley.com
**SIDLEY AUSTIN LLP**
1 South Dearborn St.
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

***ATTORNEYS FOR MICROSOFT
CORPORATION***

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 17, 2022, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned cases were subsequently served on all counsel of record by electronic mail.

DATED: May 17, 2022                                      <u>/s/ *Melissa R. Smith*</u>

**ATTORNEY FOR MICROSOFT CORPORATION**